IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WANDA ECHEVARRIA | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| CAROLYN W. COLVIN | : | |
| Commissioner of Social Security | : | |
| Defendant | : | No. 15-3277 |

## ORDER

AND NOW, this            day of            , 2016, after review of the Report and

Recommendation of Carol Sandra Moore Wells, United States Magistrate Judge, it is hereby

ORDERED that:

1.    The Report and Recommendation is APPROVED and ADOPTED; and

2.    Plaintiff's Request for Review is DENIED; and

3.    Judgment is hereby entered in favor of the Commissioner of the Social Security

Administration and against Plaintiff.


BY THE COURT:


_____
Joseph F. Leeson, Jr., J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WANDA ECHEVARRIA                    :        CIVIL ACTION
       Plaintiff                         :
                                         :
    v.                                    :
CAROLYN W. COLVIN                     :
Commissioner of Social Security       :
       Defendant                         :        No. 15-3277

**FILED**

MAY 31 2016

MICHAEL E. KUNZ, Clerk
By_____ Dep Clerk

May 31, 2016

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE

      Wanda Echevarria ("Plaintiff"), seeks judicial review, pursuant to 42 U.S.C. § 405(g), of

the final decision of the Commissioner of the Social Security Administration ("the

Commissioner"), denying her claim for Supplemental Security Income ("SSI") benefits under

Title XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for

review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set

forth below, it is recommended that Plaintiff's request for review be denied.

## I.    PROCEDURAL HISTORY[1]

      On February 23, 2012, Plaintiff protectively filed for SSI alleging disability, since

December 1, 2011, based on nerves, mental problems, shoulder problems, depression and

migraines. R. 16, 86. The claim was denied initially and Plaintiff requested a hearing. R. 16.

On August 22, 2013, Plaintiff appeared by video from Reading, PA, before H. Munday,

Administrative Law Judge ("the ALJ"), presiding from Charleston WV, for an administrative

hearing. Plaintiff, represented by Mark Segal, Esquire, and Bruce B. Martin, a vocational expert

("the VE"), testified at the hearing with the assistance of an interpreter. R. 16, 34-77. On

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and
Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Plaintiff's Request for
Review ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record ("R.").

October 31, 2013, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. R. 16-28. On April 24, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. R. 1-5. This case was referred to the undersigned by the Honorable Joseph F. Leeson, Jr., under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a Report and Recommendation.

## II. FACTUAL BACKGROUND

### A. Personal History

Plaintiff, born on July 4, 1966, was forty-five (45) years old on the date her application was filed, and forty-seven (47) years old at the time of her administrative hearing and decision. R. 23, 45. She completed 7th grade, in Puerto Rico, at the age of 18, and is able to communicate in English. R. 22, 24-25. Plaintiff has past relevant work as an apple sorter and packer. R. 26. At the time of the hearing, she lived with her boyfriend. R. 23, 51.

### B. Plaintiff's Testimony

Plaintiff completed seventh grade in Puerto Rico. She took -- and failed -- English

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise, proceed to Step 2. *See* 20 C.F.R. § 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. *See* 20 C.F.R. § 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments n Appendix I of Subpart P of Part 404 of 20 C.F.R., a finding if disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual *functional capacity,* age, education and past work experience, in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 416.920(g).

classes every year; she testified to an inability to read, write, or converse in English.[3]  R. 39-41,

44.  Plaintiff watches only Spanish language television.  R. 49.  She spoke Spanish when, in

2009, she worked for several months as a laborer and packager at a butter factory.  R. 41-42, 44.

She communicated with her supervisors through Spanish-speaking co-workers.  R. 49-50.  Her

therapist, Juan Ramirez, conducts therapeutic sessions in Spanish, and her primary care

physician Dr. Matilde Sotomayer, also communicates with Plaintiff in Spanish.  R. 59.  The

consultative examiners, Drs. Schwartz and McLaughlin, communicated with Plaintiff through an

interpreter.  R. 59-60.  Plaintiff's boyfriend helped her complete a daily activities questionnaire

as part of her disability application.  R. 58, referring to Exhibit 14E, R. 253-57.

Plaintiff has lived in Reading since 1989.[4]  R. 49.  At the time of the hearing, she lived in

an apartment with her boyfriend, who was receiving disability following a back injury at work.

R. 51, 62.  Her hobbies are watching television and playing video games for up to six hours a

day.  R. 52, 61.  She has no friends, but sees family once a week.  R. 53.  Shoulder pain prevents

Plaintiff from maintaining her home; she relies on others, primarily her boyfriend, to help.  She

can wash plates, dust and sweep, but cannot cook or do laundry.  R. 55-57.  Plaintiff has trouble

bathing herself.  R. 56.  She does not drive.  R. 62.

Plaintiff is five feet, three inches tall and weighs 192 pounds.  R. 61.  Her primary care

physician has recommended that Plaintiff eliminate soda and junk food from her diet; she

continues to drink soda, but denies eating junk food.  R. 61.  Plaintiff has not exercised as

---

[3] The ALJ found Plaintiff's claim that she could not speak or understand English less than credible.  R. 24-25.
During the hearing, the ALJ noted Plaintiff was able to correct an answer provided in English by the interpreter and
was able to answer a question posed in English by the ALJ before the interpreter translated it to Spanish.  R. 44, 45.
Moreover, the ALJ, in her decision, noted additional evidence in the record suggesting that Plaintiff's command of
English was greater than she admitted, and stated, "[t]he undersigned finds the inconsistent statements regarding her
ability to speak or comprehend English reflect poorly on [Plaintiff's] credibility."  R. 25.

[4] Plaintiff later testified that she lived in Glenside.  R. 53.  It appears from therapy notes from PA Counseling that
Plaintiff moved to Glenside sometime in early 2013.  *See, e.g.*, June 11, 2013 treatment note, in which Plaintiff is
quoted as stating, "I feel more comfortable since I moved to Glennside [sic], I have a peaceful living place now."  R.
776.

recommended, because leg pain prevents her from walking more than half a block. *Id.* She reports abstinence from alcohol for approximately three years[5] and stopped smoking following an angiogram. R. 63.

At the time of the hearing, Plaintiff last worked in 2011. R. 44, 46. She testified that she could not work because she has no strength and, when she uses her hands, her arm hurts. R. 63. Also, depression causes her to forget things.[6] *Id.*

In February 2012, Plaintiff began mental health therapy to control her symptoms of depression, with sudden angry outbursts, and trouble sleeping. R. 48-49, 50-51. She testified to suicidal thoughts. R. 52. Plaintiff avoids crowds; they make her feel desperate. R. 53. She has difficulty with concentration and memory and cannot stay on task for more than half an hour. R. 54. Plaintiff found therapy helpful. R. 60.

Plaintiff, who is right-hand dominant, has decreased range of motion in her right shoulder and can raise her arm only to shoulder level. R. 47-48, 54, 61. Notwithstanding frequent headaches that require medication, she is able to complete light housework as a distraction from the pain. R. 56-57. She also has asthma. R. 58.

Plaintiff can walk for one-half to one hour before experiencing pain in her legs that requires her to sit down. R. 63. She can stand for approximately 30 minutes and sit for up to five hours before experiencing pain in her back. R. 64. She cannot lift a ten-pound bag of rice, but can carry a gallon of milk. *Id.*

### C. Vocational Testimony

---

[5] This is contradicted by the record. Notes from a February 14, 2012 Psychiatric Evaluation and Treatment Plan state that Plaintiff drank heavily over the prior (i.e., 2011) Thanksgiving weekend and was admitted for a 10-day stay at Valley Forge Rehab. R. 773. *See also* March 26, 2012 correspondence from Valley Forge Medical Center & Hospital, confirming her admission and recommended treatment program. R. 266

[6] In her decision, the ALJ noted that, while Plaintiff attributed her inability to various mental and physical limitations, she acknowledged that she actually stopped working, because "there was no more work." R. 22 (citing R. 203).

The VE categorized Plaintiff's past work as a packer as medium[7] and unskilled[8] work. Her work as an apple sorter was light[9] and unskilled.  R. 66-67.  The ALJ asked the VE to consider an individual

> Able to perform light work, with frequent balancing, stooping kneeling, crouching, crawling, and climbing of ramps and stairs. Occasional climbing of ladders, ropes and scaffolds.  Occasional ability to push and pull with the right upper extremity, which is dominant.  Occasional exposure to pulmonary irritants, including fumes, odors, dust and gas.  Occasional reaching overhead with the right upper extremity, routine tasks involving no more than simple, short instructions and simple work related decisions with few workplace changes.  Occasional interactions with supervisors and unable to work in close proximity to others.  And to define that a little more, there can be other people in the vicinity, but there's no requirement for team work or interdependent.

R. 67-68.  The VE opined that such an individual could perform Plaintiff's past relevant work as an apple sorter.  R. 68.  Additionally, the individual could work as a: (1) housekeeper (3.2 million jobs available nationally, 176,000 regionally); (2) candy feeder (292,930 jobs available nationally, 3100 regionally); and (3) candy packer and inspector (223,100 jobs available nationally, 4320 regionally). *Id.*

When the ALJ clarified that the hypothetical individual could perform frequent reaching overhead with the left upper extremity, the VE confirmed that the foregoing jobs would remain. *Id.*  Next, the ALJ added a sit/stand option that could be accommodated for in regularly scheduled breaks and lunch; the VE confirmed that the identified jobs still could be performed; however, said jobs would not be available if the individual required a sit/stand at will option.  R.

---

[7] "Medium work involves lifting not more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §416.967(c).

[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength. . . [a] person does not gain work skills by doing unskilled work."  20 C.F.R. § 416.968(a).

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

69. Nevertheless, an individual with a sit/stand at will requirement could perform work as a: (1) price marker (401,500 jobs available nationally, 4500 regionally); (2) mail clerk (206,750 jobs available nationally, 16,000 regionally); and (3) router (65,000 jobs available nationally, 4500 regionally). *Id.* The VE testified that these jobs would remain even if the individual was restricted to a maximum of four hours of combined walking and standing in an 8-hour day. *Id.*

Upon questioning by Plaintiff's counsel, the VE opined that the inability to communicate in English would not adversely impact Plaintiff's ability to work as an apple sorter, housekeeper or candy feeder. R. 71. As to the price marker, mail clerk and router positions, the VE opined that the inability to communicate in English would diminish the number of jobs available, but the individual would still be able to perform the jobs. R. 70. More specifically, because the Reading area has a large number of Spanish speaking people, the VE opined that the total number of jobs available would be reduced by 50 percent in the Reading area, and a greater percent nationally. R. 71-72. The VE's opinion considered the ability to communicate both orally and in writing. R. 73.

Plaintiff's counsel, next, asked the VE to consider the additional limitation of only occasional ability to get along with supervisors, co-workers or the public. R. 75. The VE responded that an individual who is "causing scenes on a job a third of the day everyday" could not maintain employment. *Id.* Similarly, an individual who is off task more than 20% of the day due to an inability to concentrate would not be able to maintain a job. *Id.* Finally, the VE confirmed to the ALJ that her testimony was consistent with the Dictionary of Occupational Titles. R. 76.

### III.    THE ALJ'S FINDINGS

In her decision, the ALJ issued the following findings:

6

1. [Plaintiff] has not engaged in substantial gainful activity since February 23, 2012, the application date (20 CFR 416.971 et seq.).

2. [Plaintiff] has the following severe impairments: mild degenerative changes in the cervical spine, obesity, major depressive disorder, borderline intellectual functioning, and alcohol dependence in early partial remission. (20 CFR 416.920(c)).

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can stand and walk four hours total in an eight-hour workday. She can frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs; and only occasionally climb ladders, ropes or scaffolds. She can occasionally push, pull and reach overhead with the right upper extremity and frequently reach overhead with the left upper extremity. She is able to perform simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes. She can occasionally interact with supervisors, but is unable to work in close proximity to others.

5. [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).

6. [Plaintiff] was born on July 4, 1966 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. [Plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because [Plaintiff's] past relevant work is unskilled (20 CFR 416.968).

9.  Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969 and 416.969(a)).

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since February 23, 2012, the date the application was filed (20 CFR 416.920(g)).

R. 18, 19, 21, 26, 27.

## IV.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1991).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).  It is more than a mere scintilla of evidence, but may be less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even where to court, acting *de novo*, might have reached a different conclusion.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cr. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, this court is not permitted to weigh the record evidence.  *Rutherford v. Barnhart*, 399 F.3d 546, 522 (3d Cir. 2005).  On the other hand, the Commissioner's legal conclusions are subject to de novo review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

### B.   Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in any "substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.909.  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. §423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, work experience and residual functional capacity.  *See Poulos*, 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

**C.      Review of the Administrative Law Judge's Decision**

Applying the sequential evaluation process, the ALJ determined that Plaintiff could perform work that exists in substantial numbers in the national economy.  R. 26.  Therefore, the ALJ denied her application for SSI benefits.  R. 27-28.  Plaintiff contends that: (1) the ALJ erred by finding that Plaintiff's multiple impairments were "non-severe," Pl. Br. at 10-13; (2) the ALJ

9

erred as a matter of law by failing to provide any reason for rejecting the opinion of consulting psychologist, Dr. Schwartz, Pl. Br. at 13-16; (3) the ALJ's finding at Step Three that Plaintiff does not satisfy the Listing 12.04 criteria was not supported by substantial evidence, Pl. Br. at 17-22; and (4) the ALJ's RFC assessment was not supported by substantial evidence, Pl. Br. at 22-23. The Commissioner asks that this court affirm the ALJ's decision, because it is supported by substantial evidence. Resp. at 6-14. This court finds that the ALJ's decision was properly supported in all respects and, therefore, recommends that Plaintiff's request for review be denied.

### 1.      The ALJ correctly determined that Plaintiff's multiple impairments were "non-severe."

Plaintiff contends that, at Step Two of the sequential evaluation process, the ALJ erred by ignoring or finding non-severe a host of ailments Plaintiff has experienced. These include migraines, asthma, median arcuate ligament syndrome, left index finger vasculitis, backache not otherwise specified, mild gastritis, right shoulder pain, kidney stone with hydronephrosis, and heart problems. Pl. Br. at 11. Plaintiff contends that record evidence establishes that the foregoing impairments are severe enough to affect her ability to perform basic work activities. Pl. Br. at 11-12. Moreover, Plaintiff argues that, notwithstanding the ALJ's finding that these impairments were non-severe, she should have considered any limitations related to these impairments in crafting Plaintiff's RFC. *Id.*

The Commissioner responds that the ALJ evaluated each of Plaintiff's stated impairments in accordance with the regulations, and that the record evidence relied upon by Plaintiff shows only subjective complaints and reports of symptoms, or conditions quickly diagnosed and resolved, or requiring no treatment. Thus, no objective medical evidence confirms that these are severe impairments. Resp. at 6-7. Moreover, the Commissioner contends that Plaintiff has not identified any functional limitations associated with these impairment that could reasonably be

included in an RFC assessment, as required. *Id.* (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)). This court finds that the ALJ's evaluation of Plaintiff's impairments was supported by substantial evidence, and that her RFC assessment properly incorporated all identifiable limitations.

In the Step Two portion of her decision, the ALJ noted that "the objective evidence documented essentially normal findings" as to most of the complained of conditions (migraine, asthma, median arcuate ligament syndrome, mild gastritis, right shoulder problems, and kidney stone episode). R. 18 (citing Reading Hospital records covering the periods February 9, 2011 to March 28, 2012 and May 17, 201 to June 13, 2013, Exhibits 4F and 14F, R. 269-341 and 427-582, respectively, and Reading Endoscopy Center, LLC records, Exhibit 18F, R. 851-52). The ALJ noted in particular that: (1) Plaintiff had undergone a successful angiogram which resolved the left index finger vasculitis stemming from peripheral vascular disease, R. 18, referencing emergency room and hospital records, Exhibits 13F, R. 423-26, and 14F, R. 590-662; (2) as to her back pain, a March 2012 x-ray revealed only mild degenerative disc change, R. 18 (referencing Exhibits 4F and 14 F, R. 269-341 and 427-583); and (3) with respect to her heart problems, a cardiac work up revealed a normal profusion scan, R. 18 (referencing St. Luke's Hospital records, Exhibit 12F, R. 405-17).

Elsewhere in her opinion, the ALJ noted that, while Plaintiff was initially prescribed Vicodin for her back pain, the narcotics were later discontinued in favor of non-steroidal anti-inflammatories, suggesting improvement. R. 24 (referencing treatment notes of Dr. Sotomayor, Plaintiff's primary care physician, Exhibit 16F, R. 792-840). Again referencing Dr. Sotomayor's

11

notes, the ALJ acknowledged that Plaintiff was diagnosed with emphysematous bleb and a chest "lump," but notes that no intervention for either condition was ordered.[10]  R. 24.

Plaintiff does not refute the foregoing observations.   Moreover, though Plaintiff highlights various treatment notes in support of her position, just one makes reference to a diagnosis not addressed by the ALJ: on June 15, 2012, upon examination, Stacy Kissinger, PA-C noted that Plaintiff's abdomen was distended, and diagnosed her with median arcuate ligament syndrome, right upper quadrant abdominal pain with gallstones, chronic obstructive pulmonary disease, hypotension and hyperlipidemia.   Pl. Br. at 12 (citing R. 382).[11]  Plaintiff does not explain how the impairment identified in this diagnosis – or any of the other impairments identified by the ALJ as non-severe – impacted her ability to perform basic work activities.   In other words, though challenging the ALJ's finding, based on the record, that these impairments were not severe, because "they cause no more than minimally vocationally relevant limitations," R. 19, Plaintiff offers no evidence to the contrary.

As such, it is recommended that the request for remand to permit the ALJ to reconsider the evidence of Plaintiff's impairments, and reassess her RFC, be denied.  *See, e.g.*, *Shuster v. Astrue*, 879 F.Supp.2d 461, 468 (E.D. Pa. 2012) ("'Where the Commissioner finds at least one of a claimant's impairments to be severe and adequately incorporates any limitations resulting from both severe and non-severe impairments into his residual functional capacity assessment, the specific determinations at the second step concerning the non-severe impairments are of no dispositive significance.'" (quoting *Lambert v. Astrue*, 2009 WL 425603, at *13 (W.D. Pa., Feb. 19, 2009)).

---

[10] Dr. Sotomayor's notes reflect that plaintiff was a heavy smoker who indulged in soda and junk food, leading the doctor to "counsel[ ] her *ad nauseam*  to follow instructions and lead a healthy life."  R. 830.
[11] The ALJ notes, in her decision that Plaintiff underwent successful gall bladder removal, R. *18* (citing *St. Luke's* Hospital records, Exhibit 12F, R. 405-17).

## 2.   The ALJ properly explained her assessment of Dr. Schwartz's opinion.

Plaintiff contends that the ALJ erred as a matter of law by rejecting the opinion of Dr. Schwartz, a consultative examiner, without providing any reason. Pl. Br. at 1316. The Commissioner counters that the ALJ's treatment of Dr. Schwartz's opinion was supported by substantial evidence. Resp. at 13-14. This court agrees with the Commissioner.

When the record contains conflicting opinions from medical providers, the ALJ must determine the appropriate weight to assign each opinion. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009) (the ALJ is "free to choose the medical opinion of one doctor over that of another."). While "[t]reating physicians' reports should be accorded great weight," they are entitled to controlling weight only where their conclusions are well supported by medical evidence of record, and not inconsistent with other substantial evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). The opinions of state agency consultants, too, warrant significant consideration, in light of their "expertise in what constitutes a disability for social security purposes." *Packard v. Astrue*, 2012 WL 4717890, at *4 (E.D, Pa., Oct. 4, 2012) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012)). The ALJ should consider the relationship between the doctor and the claimant in according weight to conflicting opinions. *Packard*, 2012 WL 4717890, at *4 (citing 20 C.F.R. § 404.1527(c)). In the final analysis, "[t]he ALJ – not treating or examining physicians or State agency consultant – must make the ultimate disability and RFC determinations." *Plummer*, 186 F.3d at 429.

Here, no treating physician offered an opinion as to Plaintiff's mental residual functional capacity. Thus, it was the ALJ's duty to determine the relative weight to accord to the opinions of state agency consultants Thomas Schwartz, Ph.D, and Richard W. Williams, Ph.D.

13

As an initial matter, Plaintiff incorrectly asserts that the ALJ totally discredited Dr. Schwartz's opinion for no reason. Rather, the ALJ accorded "little to no weight" to the opinion, based on her finding that his conclusions were "inconsistent with the evidence overall." R. 26. The ALJ further discounted the opinion, because it was not accompanied by a narrative report that summarized the limitations identified in the check-box form. *Id.*

Dr. Schwartz completed an in-person evaluation of Plaintiff on May 8, 2012 and recorded his observations in a narrative summary. R. 23-24 (citing R. 353-58). He also completed a mental residual functional capacity check-sheet form. R. 25-26 (citing R. 359-60). With respect to Plaintiff's ability to understand, remember and carry out instructions, Dr. Schwartz noted moderate limitations in the areas of understanding and remembering detailed instructions and making judgments on simple work-related decisions, moderate to marked limitation in the area of carrying out short, simple instructions, and marked limitation in the area of carrying out detailed instructions, based on these observations: "8th grade education, [below level intellectual function]; impatient and irritated by questions and assigned tasks." R. 359. With respect to Plaintiff's ability to respond appropriately to supervisors, co-workers and work pressures, Dr. Schwartz noted moderate limitations in Plaintiff's ability to interact with the public, co-workers, and supervisors, and marked limitations in her ability to respond appropriately to work pressures and to changes in a routine work setting, based on these observations: "[indecipherable], impatient, egocentric, alcohol-induced mood [disorder], reports doing nothing but playing Nintendo all day." R. 359.

Dr. Schwartz provided the noted observations, but, according to the ALJ, did not provide "a narrative summary of the limitations" identified, as required by SSR 96-8p. R. 26. The ALJ's proffered reason for rejecting Dr. Schwartz's opinion is puzzling, because the ALJ reviewed and

14

discussed in her decision Dr. Schwartz's narrative summary of his examination of Plaintiff. *See* R. 23-24 (citing R. 353-58). However, even if this omission occurred[12], it is harmless error because the ALJ proffered a second reason for according little weight to Dr. Schwartz's opinion, which is supported by substantial evidence. Specifically, the ALJ explained that Dr. Schwartz's opinions were inconsistent with the mental health treatment notes PA Counseling provided, which "routinely showed that [Plaintiff] was progressing well with treatment." R. 26 (citing PA Counseling treatment records, Exhibit 15F, R. 663-739).

The ALJ explicitly examined and discussed the treatment records from PA Counseling elsewhere in her decision. R. 23, 24. She noted that Plaintiff received individual and group counseling from PA Counseling, beginning January 3, 2012. Group and individual therapy notes confirm that Plaintiff actively participated in therapy and continually improved. Her mental status examinations were routinely normal, though they indicated bouts of anxiety and depressive symptoms related to family matters. Despite diagnoses of alcohol dependence, in early partial remission, and major depressive disorder, by January 2013, Plaintiff was discharged from therapy following successful completion of a drug treatment program. R. 23 (citing R. 663-739). Plaintiff returned for additional therapy in February 2013 and reported, by March 15, 2013, "I feel better today. I feel that I can enjoy some activities in my life." R. 24 (citing R. 663).

The ALJ greatly credited the opinion of Richard W. Williams, Ph.D., a state agency consultant who completed a Disability Determination Explanation form based on his review of the medical record. R. 26 (citing Exhibit 1A, R. 94-99). Dr. Williams identified only mild limitations in daily activities and social functioning and moderate limitations in concentration,

---

[12] "*When a conflict in the evidence exists*, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)*).

persistence and pace. R. 94-96. Dr. Williams reviewed Dr. Schwartz's observations of Plaintiff, noting that he found Plaintiff to be elusive, impatient and reluctant to answer questions. R. 96. *Cf.* R. 353-57 (describing Plaintiff as shrugging, grimacing, waving off questions or providing answers with little thought). It was Dr. Williams' opinion, based on the entire record, that Plaintiff was "presenting herself as more impaired than she is" during her examination by Dr. Schwartz. R. 96.

The ALJ's decision to accord great weight to the opinion of Dr. Williams, as reflective of the record as a whole and her decision to accord little to no weight to the opinion of Dr. Schwartz, whose determination she found not consistent with the record, were both adequately explained and supported by substantial evidence. Accordingly, this court recommends that Plaintiff's request for remand for further consideration of Dr. Schwartz's opinion be denied.

### 3. The ALJ's finding at Step Three that Plaintiff did not satisfy the Listing 12.04 criteria was supported by substantial evidence.

Plaintiff contends that the ALJ erred as a matter of law in failing to find that her major depressive disorder satisfied Listing 12.04 criteria. Pl. Br. at 17-22. Specifically, Plaintiff takes issue with the ALJ's finding that she showed only moderate restrictions in the areas of social functioning and concentration, persistence and pace. Plaintiff argues that her restrictions in these areas are marked, hence she should be found disabled *per se*. *Id.* The Commissioner counters that substantial evidence supports the ALJ's decision. Resp. at 7-11.

With respect to social functioning, the ALJ noted that although Plaintiff testified that she had no friends, treatment notes indicate that she participated in group therapy and visited with family members. R. 20 (citing PA Counseling treatment notes, Exhibit 15F, R. 663-739). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00C2 ("You may exhibit strength in social functioning by such things as . . . actively participating in group activities."). *Elsewhere in her*

decision, the ALJ noted that Plaintiff lived with her boyfriend and communicated with her Spanish-speaking co-workers. R. 23. This resulted in the ALJ finding only moderate limitations in this area. R. 20.

Though she does not contradict the evidence supporting the ALJ's finding, Plaintiff does refer to treatment notes that support her position that her limitation is more extreme. One references recognizes a "diminished interest in being with other people." R. 724. However, other treatment notes reviewed attribute Plaintiff's reluctance to socialize with others, particularly old friends, to a fear of relapse. R. 715. Plaintiff also highlights a note referencing "poor ability to accept other's opinions." R. 776. However, that very same note described Plaintiff as "comfortable and peaceful" following her move to Glenside, and noted her intent to "implement assertive social abilities in her [efforts to] share with new neighborhood members." R. 777. None of the material stressed by Plaintiff suggests that the ALJ's finding was not supported by substantial evidence.

With respect to concentration, persistence and pace, the ALJ noted that, though Plaintiff testified that she had difficulty remembering and concentrating, she was able to watch television and play video games all day, suggesting only a moderate limitation in this area. R. 20 (citing Function Report – Adult, R. 215). In response, Plaintiff highlights treatment notes she claims reflect a marked limitation: R. 773 (a Psychiatric Evaluation and Treatment Plan in which Plaintiff describes one of her symptoms as "problems with concentration"); R. 715 (a treatment note in which Plaintiff describes one of her symptoms as difficulty in concentrating); and R. 670 (Initial Clinical Assessment form, "Decreased Concentration" checked off as a symptom). It is of note that the ALJ found Plaintiff less than credible with respect to her own statements concerning, *inter alia*, the intensity and limiting effects of her symptoms, and less than credible

17

generally R. 22, 25. Plaintiff also relies on the opinion of Dr. Schwartz as supporting a marked limitation in this area. However, the ALJ specifically gave little to no weight to Dr. Schwartz's opinion, and this court has found that substantial evidence supported this decision. *See supra*, Section IV.C.2. Again, nothing proffered by Plaintiff suggests that substantial evidence did not support the ALJ's finding.

Moreover, the ALJ accommodated Plaintiff's limitations in the areas of social functioning and concentration, persistence and pace in her RFC assessment. Specifically, Plaintiff was limited to work that only occasionally required her to interact with her supervisors and did not require her to work in close proximity to others, and was also limited to work involving only "simple routine tasks involving no more than simple short instructions and simple work-related decision with few workplace changes." R. 21.

Plaintiff does not suggest that the ALJ relied on incorrect or no evidence to support her decision. Rather, she points to other evidence in the record that she believes supports a finding of more extreme limitations. This is not sufficient, and this court finds that the ALJ's Step Three findings were supported by substantial evidence, and recommends that Plaintiff's request that the matter be remanded for further consideration of this issue be denied.

### 4.     The ALJ's RFC assessment and her finding that Plaintiff was not disabled were both supported by substantial evidence.

Plaintiff contends that the ALJ's RFC assessment was flawed, because, while the ALJ found Plaintiff capable of performing light work, she restricted her to only four hours of standing and walking in an eight-hour day. Pl. Br. at 22-23, citing R. 21. Light work, however, requires approximately six hours of standing and walking in an eight-hour day. Pl. Br. at 23 (quoting SSR 83-10, 1983 WL 31251, at *5 (1983)). Additionally, Plaintiff notes that the RFC assessment limits Plaintiff to only "occasional" pushing, pulling and reaching with the right

upper extremity; though light work typically requires frequent lifting or carrying of objects. *Id.*
Because the limitations included in the RFC assessment are inconsistent with light work,
Plaintiff argues that remand is required. Pl. Br. at 23. The Commissioner responds that the RFC
assessment was supported by substantial evidence, and that the ALJ was entitled to rely on the
evidence provided by the VE based on hypotheticals that accurately detailed the RFC assessment
in reaching her finding of not disabled. Resp. at 11-14.

Social Security Ruling 83-10 defines light work as follows:

> Light work. The regulations define light work as lifting no more
> than 20 pounds at a time with frequent lifting or carrying of objects
> weighing 10 pounds. Even though the weight lifted in a particular
> light job may be very little, a job is in this category when it
> requires a good deal of walking or standing – the primary
> difference between sedentary and most light jobs. A job is also in
> this category when it involves sitting most of the time but with
> some pushing and pulling of arm-hand or leg-foot controls, which
> require greater exertion than sedentary work; e.g., mattress sewing
> machine operator, motor-grade operator, and road-roller operator
> (skilled and semi-skilled jobs in these particular instances).
> Relatively few unskilled light jobs are performed in a seated
> position.
>
> "Frequent" means occurring from one-third to two-thirds of the
> time. Since frequent lifting or carrying requires being on one's
> feet up to two-thirds of a workday, the full range of light work
> requires standing or walking, off and on, for a total of
> approximately 6 hours of an 8-hour workday. Sitting may occur
> intermittently during the remaining time. The lifting requirement
> for the majority of light jobs can be accomplished with occasional,
> rather than frequent, stooping. Many unskilled light jobs are
> performed primarily in one location, with the ability to stand being
> more critical than the ability to walk. They require use of arms and
> hands to grasp and hold and turn objects, and they generally do not
> require use of the fingers for fine activities to the extent required in
> much sedentary work.

SSR 83-10, 1983 WL 31251, at *5-6. *See also* 20 C.F.R. § 416.967(b).

As an initial matter, Plaintiff is not arguing that the RFC assessment was deficient in that it excluded limitations supported by the record. *See* Pl. Br. at 22-23. This issue has, in any event, already been addressed. *See supra,* Section IV.C.1. Thus, the issue is whether the ALJ committed an error of law when she found Plaintiff not disabled because she is capable of performing light work that exists in the economy, even though, by virtue of her limitations, she is incapable of performing the full range of light work.

Where an individual cannot perform a full range of work at a particular exertional level, SSR 83-12 advises an ALJ to consult a VE. *Bermudez v. Colvin*, 2014 WL 4716510, at *13 (M.D. Pa., Sept. 22, 2014) (citing SSR 83-12, 1983 WL 31523 at *2-3; 20 C.F.R. §§ 404.1566(e), 416.966(e) (permitting the ALJ to consult a vocational expert when complex issues involving a disability determination exist)). It is well settled that "[a] hypothetical question posed to a vocational expert must reflect all of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where the ALJ's RFC assessment, as reflected in a hypothetical to the VE, is supported by substantial evidence, the ALJ is entitled to rely on the VE's testimony as to the availability of jobs to the claimant. *See, e.g.*, *Ambrose v. Colvin*, 2015 WL 877790, at *15 (M.D. Pa., Mar. 2, 2015) (denying request for review where RFC assessment would not permit claimant to perform full range of light work, and stating, "[b]ecause Plaintiff could not perform the full range of light work, the ALJ appropriately consulted the VE in accordance with SSR 83-12, and included all of the RFC limitations in his hypothetical, including that Plaintiff was limited to only occasional standing/walking. . . The VE, in considering the RFC limitations, concluded that Plaintiff could perform [a limited number of light work jobs]."). *See also Young v. Astrue,* 519 Fed. Appx. 769, 770-71 (3d Cir. 2013) (non-precedential) (ALJ's determination that claimant who was limited to standing or walking no

more than two hours, and sitting no more than six hours, in an eight-hour day, could perform a narrow range of light work was supported by substantial evidence; ALJ posed accurate hypothetical to VE and was entitled to use expert's testimony in reaching decision).

Here, the limitation related to Plaintiff's ability to use her right upper extremity was included in the original hypothetical posed to the VE; the VE identified jobs available in the economy – including Plaintiff's past relevant work – available to the individual described.  R. 67-68.  Subsequently, the ALJ asked VE whether the light, unskilled jobs she identified as available to the hypothetical individual would remain available if the individual's assessment was modified to include a limitation in standing and walking for a maximum of four hours in an eight-hour day.  R. 69.  They VE responded that the individual "could do those jobs with that restriction." *Id.*  Moreover, the AJ asked the VE whether her testimony was consistent with the DOT; the VE testified that it was.  R. 76.

Both the ALJ's RFC assessment and hypothetical to the VE properly reflected all of the limitations supported by the record.  As such, the ALJ was entitled to rely on the VE's opinion that jobs exist in significant numbers that Plaintiff could perform, and the ALJ's resulting finding that Plaintiff was not disabled was not in error.  Therefore, this court recommends that Plaintiff's request for review on this issue be denied.

## V.    CONCLUSION

A thorough review of the record indicates that the Commissioner's decision was supported by substantial evidence in all respects.  Accordingly, I make the following:

## RECOMMENDATION

AND NOW, this 31st day of May, 2016, I respectfully recommend that:

1.      The Report and Recommendation be **APPROVED** and **ADOPTED**.

2.      The Plaintiff's Request for Review be **DENIED**.

3.      Judgment be **ENTERED** in favor of the Commissioner of the Social Security

Administration and against Plaintiff.

It be so ORDERED.


CAROL SANDRA MOORE WELLS
United States Magistrate Judge




ENTERED

MAY 3 1 2016

CLERK OF COURT

22

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

5/31/2016

RE:    Echevarria vs Colvin
           CA No. 15-3277

# NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Wells, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge**.

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: _____
Joe Lavin, Deputy Clerk

cc:    K. Niven
        A. Lynch
        S. Romagnole

        Courtroom Deputy to Judge Leeson

civ623.frm
(11/07)